argument is United States v. Ferman. Good morning. Good morning. May it please the court, Ms. Hammond. I'm Daniel Rubin from the Las Cruces Federal Defender. I represent Mr. Ferman. We believe Judge Gonzalez in denying Mr. Ferman's motion to dismiss got it wrong. One thing he got right was in his order, recognizing the Botris Grady's versus Gonzalez case, the 10th circuit case, where it states if the immigration judge making a determination that someone in removal proceedings has committed an aggravated felony and removes that person on that grounds, if the immigration judge has deferred in determining that it was an aggravated felony, then exhaustion of remedies can be excused. So we're really left with the most important question in this case, which is, was Mr. Ferman's Texas sexual assault conviction an aggravated felony or not? Well, this is not a direct appeal, which is what, um, Botris Grady's case was. And, um, we also don't have the intervening Supreme court precedent that was significant there. Does that matter? I mean, we're on collateral review at 12 years after this decision. Yes, Your Honor. I think that Botris, um, I think still is relevant, um, in that someone who's factually innocent of a incorrect decision of an immigration judge, um, has received due process that that is fundamentally unfair and then suffered prejudice as a result. In our unpublished decision, and I admit it's unpublished, uh, Bustillos versus Bustillos-Sosa, we distinguished and said that if you have an alien who has waived the right to a direct appeal, you can't rely on the miscarriage of justice, um, argument in the Botris Grady's case. How do you respond to that? I respond with Mr. Ferman. There's so many reasons, um, including his waiver of appeal, not being, um, voluntary or intelligent based on primarily the ineffective assistance accounts claim that we make throughout. Well, didn't he have to raise the ineffective assistance of counsel claim prior to this? He never raised it. At the district court level, Your Honor? Yes. Or, I mean, yeah. I mean, it's, isn't it too late now to raise that claim? Um, we raised it at our district court briefing throughout. I raised it at oral arguments, so we played the tape as well. Um, that was our primary argument, um, at the district court level. I, I need to start on this case at the beginning. Um, this is an appeal from the district court's denial of a motion to dismiss the indictment, right? Yes, Your Honor. And when you look at the indictment, it doesn't say anything about what we are all talking about here, which is what happened in 2004. Yes, Your Honor. The indictment is based upon, uh, his conduct, prior conduct, uh, of 2016. That was just a reinstatement. So every removal of Mr. Furman has been a reinstatement of his original 2004 deportation. So what we're doing is attacking that original. I appreciate what you're doing, but I'm saying that's not the basis for this indictment. There's nothing said in this indictment about 2004. The 2016 removal that's referenced in the indictment, um, is ultimately dependent on the 2004 removal. If we can attack the 2004 removal. Are you attacking the 2016 removal? Yes, Your Honor. Cause it's a reinstatement of that 2004 removal. Yes. So you're collaterally attacking the 2004 removal through a motion to dismiss the indictment in 2016. That's correct. Yes. Yes. So, so let's, can you start by talking about exhaustion? Cause you kind of skip right over it. Sure. There's, there's three requirements and, and you, I am almost getting that you think that your substantive, your underlying substantive argument somehow justifies not having to meet any one of those requirements, or at least not having to meet the exhaustion requirement. And if that's the case, what's, what's the point of the factors under 1326 D? Well, what's the point of having strict requirements for exhausting and for your establishing that the removal proceeding improperly deprived you of the opportunity for judicial review? If you don't meet those two factors, how do we get to your underlying substantive arguments and how can those be a basis? Okay. Well, I will go back to exhaustion. I think that exhaustion can be excused, as I mentioned, based on the immigration judge getting the substantive part of the hearing wrong, but I also think, and we put this, we certainly have never said that no authority for that. But I also feel that exhaustion can be excused if really it's, it's ultimately his 30 day appeal waiver. And he, the person representing him that day in 2004, waived that on the spot. We are right. He waived his rights to appeal. So he didn't exhaust. So what's your argument about exhaustion? Is it ineffective assistance of counsel somehow justifies the, the on the record waiver of appeal? Yes. I think that if you're, if your waiver is not knowing and intelligent, then therefore exhaustion can be excused. And he could have raised that ineffective assistance of counsel argument earlier as well. Um, had he, I mean, I'm, I'm just, there's so many layers here and I'm not seeing you point to any authority that lets you get past this seeming clear problem with exhaustion. Well, there is case law out there, mostly in the ninth of, if you, if you haven't made a knowing and intelligent waiver that you haven't exhausted your remedies, what's the evidence of a knowing, no knowing and intelligent waiver here, his ineffective assistance of counsel. Um, a gentleman who shows up on the day of a very complicated immigration hearing, um, who it was not properly substituted, as we've pointed out. He was properly substituted. The rule that he signed said that the non-lawyer representative he had agreed to, and it was also in there that the court could approve substitutions. And during the hearing, the court said, well, you're a lawyer. She's not, you're her boss. This is fine with me. And your client sat there, not only didn't make any peep that that was a problem, but two times, as you look at the record, consulted with this alleged interloper about what was going on in the proceedings. Your Honor, I respectfully disagree with the substitution process in that the attorney who Mr. Furman had requested be there, um, Ms. Marcella Garcia, she's the one who has to request approval of substitution. That's exactly what it says. Additionally, I guess we're relying of course, on Mr. Furman in a process, which he's unfamiliar, um, interjecting and saying, and knowing the law, um, and saying this is going wrong. This is not what I had wanted. And I think that's unrealistic, Your Honor. So again, back to this indictment, it refers to having been previously deported and excluded and removed on or about November 28, 2016. Why are we talking about 2004? There is a fresh deportation, a fresh proceeding that, that falls in the middle of this, doesn't it? Yes, Your Honor. He, he was, he's been removed. He was removed in 2016 and he was just removed as well after this case. But both of those are simply reinstatements of the 2004 removal. Um, there was no new fresh process at immigration. Um, so if by attacking the original removal, which is the one that was in an error, that's how we then get to, um, the dismissal of the indictment. Um, that's based on the 2016 removal. That's a stretch. Your Honor, that's typically... What's your authority for that? I don't have authority for that, Your Honor. Um, but that's typically how these are done in that you have one chance of an immigration judge and then immigration after that simply relies on that original removal and just simply, um, has a reinstatement. Um, so that's fairly typical in the folks who have been removed multiple times. Um... So he couldn't have, so in 2012, I think it is when he pleads guilty to illegal re-entry and he gets 64 months, he couldn't have collaterally attacked then? I think he thought... Why not? He would, he thought it would have been a futile because ultimately he... His personal belief that it's futile is not part of our record here. Well, Your Honor, in Mendoza-Lopez, uh, the Supreme Court case, um, the court found there the original administrative proceedings were effectively eliminated. All the errors that had gone wrong effectively eliminated DuPorte's right to judicial review. I think the same could be said about exhausting your legal remedies. Congress responded to the Mendoza-Lopez by adopting the very statute we're looking at that says what you have to do in order to be able to bring this claim, which is, as Judge Moritz already said, you've got to exhaust any administrative remedies. You've got to show that the alien was improperly deprived of the opportunity for judicial review and that the entry of the order was fundamentally unfair. We can't even get to the fundamentally unfair unless you can meet those first two prongs. Right. And I think that ultimately, because his counsel, we feel, was ineffective, waives his right to appeal, that's gone. Um, so then a person in Mr. Furman's shoes thinks, what at this point can I do? Um, the attorney... Was he denied an opportunity for judicial review of the effectiveness of his counsel before today, 12 years earlier or later? Yes. We think that we think his whole process in immigration effectively deprived him of his opportunity of judicial review. The fact that he never got the 10 days, all of his notices required that he would not have his hearing within 10 days for the opportunity to prepare. Well, the government says you could have filed a motion to reopen the deportation proceedings to argue ineffective assistance of counsel. I'm sorry. I think the government argues that he had to exhaust by, uh, filing a motion to reopen and he didn't do that anywhere. I, and again, I think then we get to a futility, um, which is he waived his right to appeal. Um, nothing went right during these hearings. But that wouldn't have been futile because if he waived his right of appeal because of ineffective assistance of counsel, that's one of the few ways you can get over a waiver. So I'm not buying futility on that. Your honor. And again, we just point out to all the mistakes that were made in the hearing. And I mean, if we can go back to 2004 slightly here, this gentleman, the one notice that he doesn't sign, um, that's in his a file is the additional charges that were brought against him because the first time around it didn't work. He then appears with a representative who he meets the morning of that hearing. Um, and, and again, I think that, um, Mendoza Lopez states that based on the administrative proceeding being so sloppy that those that can be excused. Um, additionally, and again, I, I know we can't get, your honors believe we can't get to the heart of the matter because he hasn't satisfied the other problems. I think there's ways of satisfying those based on everything that went wrong. And the fact is, is, is the government had an opportunity to do things, right? They had an opportunity to substitute, right? They had an opportunity to give him enough time to prepare. They had enough, they had time. I mean, the immigration judge was decent. He was, he was, if you've listened to the audio, he knew potentially that this was not an aggravated felony. Um, but a gentleman who met him that morning took over. We have not seen anything from the gentleman who took over that morning. Um, the government's had the opportunity that that man is still in practice in El Paso. We've heard from Mr. Furman of what happened that day. We got a declaration, but we've never heard from his, what we consider ineffective lawyer, uh, what happened that day. So we think those, that all those, um, kind of circumstances coming together, then we get to the heart of the matter, which is we've got an LPR who was removed, um, potentially, well, in error. Um, and that's really. And then did, and then did he reenter? He did reenter. And charged with illegal reentry? Yes. His family was here. He had four U.S. citizens. And sentenced again. And sentenced again, where he had terrible counsel that second time around. And then removed. Yes. And again, re-entered? Yes. Yes. Which doesn't really. And we want to get back to 2004 with all of that. We do. Coming in between. We do. His life. Because the basis for these subsequent convictions and removals are all freestanding, are they not? No, they're all dependent on the 2004 removal. I don't understand how we can say that. Because they're all reinstatements of the 2004 removal. They all fall like a house of cards. It's still illegal reentry. Yes, it is. Yes, it is. But the re, the, the deportations are all based on the 2004, um, removal. Let me. I'd like to reserve the. Let, well, let me ask you this. If we got to the merits of, you know, your argument, the removal was, there was also a crime against moral turpitude finding, and you didn't challenge that until the reply brief here. And so if that's waived, there's an independent ground for removal that doesn't even look at your argument, your other argument. I welcome this court to read the district court briefings where we raised both crime involving moral turpitude. What you raise in the district court doesn't preserve what you raise. There's two preservation issues. One is the district court and one is to raise it with us. And you have to raise it in your opening brief with us or we don't consider it. Judge Gonzales and his denial didn't even address it. Um, it was a foregone conclusion. The government, we said they conceded it in there at the lower level. They never responded. Do you admit it wasn't raised here until the reply? We felt that it didn't need to be because we felt that the government had conceded it down below. Thank you. Thank you. Good morning. My name is Nicole Hammond and I'm representing the United States in this case. May it please the court, counsel, the district court's denial of Furman's his administrative remedies and he was not excused from doing so. Furthermore, he was not deprived of the opportunity for judicial review and his removal proceeding was fundamentally fair. Furman satisfied none of the requirements for collaterally attacking a removal order in a criminal re-entry proceeding. Yet one need not look further than the first requirement, administrative exhaustion, to find that the denial of Furman's motion to dismiss was warranted. Was the failure to exhaust due to ineffective assistance of counsel? I mean, his lawyer waived everything. Waived the right to appeal. Your Honor, the district court found that the defendant Furman knowingly involuntarily waived his right to appeal. This court reviews that factual finding for clear error and the record on appeal reflects that this finding, these findings by the district court were in fact proper. What if I disagreed with you? What if I thought that this was a stranger to Mr. Furman that he met when he popped up at the hearing and that there was not any, and that he popped up at the hearing and essentially agreed to everything that the district court waived all rights to challenge that? Your Honor, I have two responses to that. First, the Seventh and the Fifth Circuit have considered whether or not there is an exception to the requirements set out under 1326D for ineffective assistance of counsel. Both of those circuits have found there is no such exception. As previously discussed, there is an administrative remedy to ineffective assistance of counsel. To this very day, Furman pertains the right to move to reopen his removal proceedings on the basis of ineffective assistance of counsel. He has not done so. Is that the basis that the other circuits have rejected this argument? Because there's this administrative remedy available for challenging based on ineffective assistance of counsel? That is the basis on which the Seventh Circuit has found that to be the case. The Fifth maintains that there is no exception to those three requirements set out under 1326D because there is no exception recognized by statute. And to find such an exception would upend Congress's mandate and interpretation of Lopez-Mendoza. Isn't that sort of our preliminary question then? And I don't know that it was addressed in the appellant's brief, but isn't our preliminary question whether we'd recognize any exception at all before we'd even talk about ineffective assistance of counsel? Yes, Your Honor. As a basis for it, or you see what I'm saying? Yes, Your Honor. I believe that is the primary question. And this court has held that a defendant launching a collateral attack on an underlying removal order must satisfy each of the three requirements that's established in this court. And Batras-Gradiz from 2007 doesn't do that because you argued it was a civil immigration appeal and you pointed out that there's a, I think there's a Fifth Circuit case kind of rejecting it in this application. Is that your argument? I mean, I guess I'm trying to get to why we would accept your argument that we wouldn't even look at exceptions for exhaustion at least. Maybe I'm not. The case you're referencing, as you mentioned, is a civil immigration appeal. It is not subject to the requirements and limitations of 13-2060. Which case are we talking about? Batras. Batres. Batres. Additionally, if the court were to consider, reach the merits of the ineffective assistance of counsel argument proposed by Furman, there's nothing in the record to demonstrate that Attorney Moreno was unfamiliar with Furman's immigration case or the pertinent case law. By conceding deportability, waiving appeal, and declining the opportunity to apply for relief from removal, Moreno made a strategic decision that permitted Furman to be released from custody and removed to Mexico that same day. Had Furman contested the aggravated felony rape charge, the immigration judge would have been required to review the criminal indictment and judgment underlying that conviction. Once these documents were admitted into evidence before the immigration court, they would have all but foreclosed the possibility of Furman receiving any form of relief from removal. The immigration judge had already found Furman removable based on the two unrelated crimes involving moral turpitude charge. So avoiding a removal order was not a possibility at that point. Post-hearing voluntary departure requires a showing of good moral character and cancellation of removal requires a discretionary determination by the immigration judge that the defendant is deserving of relief from removal. Let me, when you say that there's no evidence of ineffective assistance, I mean, the judge suggested that there might be a problem with whether we were committing an aggravated felony and if that's a right, can we look back and say that was ineffective? Your Honor, what I'm suggesting here is that the decision was a strategic one. It did not amount to an effective assistance of counsel because the immigration judge made clear that if this defendant Furman had been convicted of organ to organ contact, then essentially Furman would be wasting his time contesting the charge of removability. Moreno, in response to that, said at this time, based on our knowledge of our client's case, we are conceding deportability. Additionally, well, wasn't the argument that under the common law definition of rape, there had to be sexual intercourse? Your Honor, the sixth and the fifth circuits have recognized that the statute under which Furman was convicted for sexual assault is not a categorical match for generic rape. However, in all remaining circuits, including this one, the board precedent remains. Therefore, any immigration judge in this circuit or a majority of circuits can find that a defendant such as Furman convicted of sexual assault in Texas is in fact removable on the basis of aggravated felony rape. That remains to be the case today. Has the 10th Circuit ruled that? No, Your Honor. That is an open question in this circuit and the majority of circuits, but the majority of circuits are not bound to the published board decision on the matter. It's only in the fifth and sixth circuits that that has been overturned. And this conviction for aggravated felony, is that the basis for this indictment that's in front of us? Could you repeat your question, Your Honor? Is this indictment, does it refer in any way to this prior conviction of aggravated felony removal for that crime? No, Your Honor. The, there were three charges of removability. The immigration judge dismissed the first charge because the defendant was never incarcerated for his sexual assault conviction. I'm talking about the indictment in front of us. The indictment makes no reference to these grounds, Your Honor. You're correct. What does it refer to? What does it rely on? It does refer to the removal in 2016. You are correct. However, this, that removal was premised on the removal order issued in 2004. Regardless of the aggravated felony rape charge of deportability, the immigration judge did find that Furman was removable based on the two unrelated crimes involving moral turpitude charge. Uh, before discussing whether or not Furman wished to contest the third charge, the immigration judge found him removable based upon that second charge. Therefore, But he had to have two crimes against moral turpitude, right? Yes, Your Honor. And one of them was a robbery of a vehicle. He, he was convicted of a Texas burglary statute, which at the time of this hearing was recognized as a crime involving moral turpitude by the Board of Immigration Appeals. In 2016, the Board of Immigration Appeals changed its position on that matter. No longer recognizes a conviction under that state statute as a crime involving moral turpitude. However, it's unreasonable to expect the immigration judge to have anticipated that fundamental change in law that occurred 12 years after the hearing. We need to look back if we're to assess the fundamental fairness of this hearing, which the government maintains, we don't even get to that prong. But if we were to assess it, we would need to consider the case law at the time. At the time, it was clear that Mr. Furman was removable based on his convictions for two unrelated crimes involving moral turpitude. Um, is this, assuming we get over the exhaustion issue and all the rest of it, and we get to this, um, is the CIMT issue properly before the appellate court? No, Your Honor, Furman has not preserved that issue for appeal. Um, however, I was simply asserting that even if we were to reach the merits, Furman would not be successful in his argument. Uh, this proceeding still was fundamentally fair. However, his opening brief focused solely on the third charge of removability, uh, involving the aggravated felony rape charge. And the government is not conceding that a conviction under this subsection of the Texas state sexual assault statute did not amount to, and was a categorical match for, aggravated felony rape. However, it's simply not dispositive here. The district court has properly found that Furman knowingly and voluntarily waived his right to appeal. Thereafter, he never filed appeal with the Board of Immigration Appeals, and he never moved to reopen his proceedings. Not on the basis of an effective assistant counsel, not on a fundamental change in law, not on procedural errors. Nor did he raise this 2004 challenge and any subsequent removals as in 2012. I mean, if all of these things are a chain reaction that go back to 2004 and you have an iteration of removals, it seems to me there are failures to exhaust multiple times. Your Honor, I completely agree. The defendant was incarcerated for a matter of five years in the United States following this removal order. He never at any time contested the removal order. He subsequently was then deported again and reentered. And only now, over 15 years later, is he contesting that original issuance of the removal order. But you contend that he in fact could file a motion to reopen the 2004 removal proceeding even today?  Even today, he could file such a motion. And what all could he raise in that motion? Could he raise, he could raise the ineffective assistance of counsel? Yes, Your Honor. The lack of a knowing and voluntary waiver of the right to appeal based on ineffective assistance of counsel? He could raise an ineffective assistance of counsel claim, yes. He could also raise the issue of a fundamental change in law. He could raise the issue of lack of notice. He could raise any of these issues. Doing so would not preserve his right to collaterally attack the removal order in reentry proceedings, however, because a motion to reopen is subject to review by this court. Therefore, if he was to do so, file such a motion, it would demonstrate that his right to judicial review was preserved. But so if he were to prevail in, I'm trying to figure out what you're telling me, if he were to prevail in his motion to reopen and the court said you, you did not voluntarily waive, you're saying it would have no impact on the subsequent removals? If Vermin was to move to reopen, the immigration judge found that reopening was warranted, he could potentially reconsider whether or not Vermin was removable and also whether or not he was eligible for any form of relief. As previously mentioned, immigration judges in this circuit are still bound to find defendants convicted of the sexual assault statute removable on the basis of committing an aggravated felony rape. Regardless, but, but he'd be entitled to a new proceeding on that because it wouldn't necessarily all be waived if his counsel was ineffective. He does retain the right to move to reopen his proceedings. The, the outcome of, of that motion is, is unknown and outside the scope of this administrative exhaustion requirement. Um, your honor, I am out of time. If the court has no further questions, then I, um, I rest. Thank you. Thank you, counsel. Thank you both for your arguments this morning. The case is submitted. Court is adjourned.